CASE 7—PETITION IN EQUITY—NOVEMBER 15, 1883.

# Cochran & Fulton v. Anderson County National Bank, &c.

### APPEAL FROM ANDERSON CIRCUIT COURT.

PARTNERSHIP — DORMANT PARTNERS—POWER OF PARTNER TO BIND FIRM.—Where two or more persons purchase one or more specific lots or parcels of property on joint account, or in the nature of a limited partnership, for the purpose alone of sale and profit, and there is no fraud or concealment as to the manner of purchase, the mere fact that one of the partners or joint owners is intrusted with the possession does not constitute the others *dormant* partners; and, therefore, the partner in possession can not pledge the property for his individual debt so as to bind the other partners. The rule of *caveat emptor* applies, and not the general rule applicable to commercial partnerships, that dormant partners can not assert a claim to the partnership property as against the creditors of the ostensible partner.

The opinion in this case was not marked for publication when delivered. It is now published by direction of the court.

Cochran & Fulton v. Anderson County National Bank, &c.

GEO. WEISSINGER for Appellants.

1. The active, visible partner in a dormant partnership has in the eye of the law, as to creditors and purchasers, no partner at all, and has a right to dispose of the partnership effects or securities in any manner, and to bind his partners by his acts. (Cammack v. Johnson, 1 Green's Ch'y, 163; Lord v. Baldwin, 6 Pick., 348; French v. Chase, 6 Greenleaf, 166; Talcott v. Dudley, 4 Scammon (Ill.)

2. To constitute one a dormant partner, it is not necessary that he should wholly abstain from actual participation in the business of the firm, or be universally unknown as having a connection with it. (North v. Bloss, 30 N. Y., 374; Kelly v. Hurlbut, 5 Cowen, 534; Mitchell v. Dall, 2 Harris & Gill, 171; Gow on Partnership, p. 12.)

JAMES SPEED on same side. •

The purchaser of goods from one in possession of them has no possible means of knowing the rights or interests of dormant partners of the person in possession, and, therefore, acquires title as against such partners.

YOUNG & TRABUE on same side, in petition for rehearing.  ·

1. A partnership may exist in a single transaction as well as in a series; if there is a joint purchase with a view to a joint sale and communion of profit and loss it is a partnership trade, although it is confined to a single thing. (In re Warren, Daveis, 323; Ripley v. Colby, 3 Fost. (N. H.), 443.)

2. A partner may borrow money and pledge the partnership effects as collateral security therefor, and bind the firm to an innocent lender, though the borrowed money be subsequently misapplied; and this is true of a special partnership in a particular venture, as well as of a general partnership. (Reid v. Hollinshead, 4 Barn. & Cress., 837; Story on Partnership, sections 94, 104, 105; Winship v. Bank of United States, 5 Pet., 529, 561; Livingston v. Roosevelt, 4 John., 251; Lindley on Partnership, 269; Bank of Kentucky v. Booking, &c., 2 Litt., 45; McGowan, &c., v. Bank of Kentucky, 5 Litt., 271; Burgess v. Northern Bank of Kentucky, 4 Bush, 600.)

D. W. LINDSEY for Appellees.

1. A warehouseman's receipt for goods not in his warehouse at the time of the execution and delivery of the receipt does not pass any right or title to the holder. (Cochran & Fulton vs. Ripy, Hardie & Co., 13 Bush, 496); and a mere redrafting of the original receipts after the property has been removed to his warehouse amounts only to a ratification of the original contract, and can not add to its efficacy.

2. A partner can not pledge the partnership property for his individual

debt. (Story on Partnership, section 94; Smith's Mercantile Law, p. 71; 18 B. M., 199; Wagnon v. Clay, 1 Mar., 257.)

3. A factor or commission merchant or agent can not pledge or mortgage the goods of his principal. (2 Kent's Com., section 41.)

4. In a non-commercial partnership, in order to make out the liability of the firm, it must be made out affirmatively that the partner who made the contract in question had the power to make it. (Judge, &c., v. Braswell, &c., 13 Bush, 75.)

5. A joint purchase for a particular adventure, upon an agreement to share jointly in the profit and loss, constitutes a *limited* partnership. (Crompston v. McNair, 1 Wend., 457; Bentley v. White, 3 B. M., 266.)

6. Appellees were not *dormant* partners, but, even if they were, the law with regard to dormant partners extends only to commercial partnerships, and has no application to dormant partners in special adventures. (Pitts v. Waugh, 4 Mass., 421; Smith v. Burnham, 3 Sumner, 435; Rodgers v. Batchelor, 12 Peters; Binney v. The Banks, 5 Mason.)

**P. B. THOMPSON, JR., ON SAME SIDE.**

1. A partner can not pledge the assets of the firm on his individual account, and, if he does so, the pledgee risks title and holds subject to the superior title of the firm, although he may not have known that the property was that of the partnership. (Binney v. U. S. Bank, 5 Mason; Rogers v. Batchelor, 12 Peters, 229.)

2. A warehouseman's receipt for property not in his warehouse does not pass any title thereto. (Cochran & Fulton v. Ripy, Hardie & Co., 13 Bush, 496.)

3. A plaintiff claiming title under a warehouse receipt alleged to have been issued at a certain time can not recover upon proof of a warehouse receipt issued at a subsequent date, the time being material. (3 Litt., 419.)

**T. C. BELL ON SAME SIDE.**

1. Under the warehouse law a warehouseman has no authority to issue receipts in his own name on property not his own, and, therefore, a receipt ·issued by him on property which he owns jointly with another is illegal and void.

2. A secret partner is bound by the act of the ostensible partner only where the credit was given to the ostensible partner in the course of the business of the partnership and for the common benefit. The power to sell does not include the power to pledge for the individual debt of the ostensible partner. (Bank v. Binney, &c., 5 Mason, 188; Rogers v. Batchelor, 12 Peters, 232; Bentley v. White, 3 B. M., 263.)

Cochran & Fulton v. Anderson County National Bank, &c.

3. A partnership in a single adventure is not a commercial partner-
ship, and, therefore, the general doctrine applicable to dormant
partners in commercial partnerships does not apply here. The rule
of *caveat emptor* applies.

THOMAS H. HANKS on same side.

One partner can not apply the partnership funds or property to the
payment of his private debts, and the title of the other partners is
not thus divested in favor of the private creditor, even if the latter
was ignorant that the funds or property belonged to the partner-
ship. (Rogers v. Batchelor, 12 Peters, 221; Daniel v. Daniel, 9 B.
M., 196; Bank of Kentucky v. Herndon, 1 Bush, 359; Conwell v.
Sandidge, 8 Dana, 279.)

JOHN B. LINDSEY, on same side, filed reply to petition for
rehearing.

JUDGE PRYOR delivered the opinion of the court.

It is unnecessary to notice the preliminary ques-
tions raised by counsel for the appellee on the last
hearing, and in the consideration of this case it will
be treated as if all the actions had been consoli-
dated and heard with the action in which Shipman
was adjudged to have made a fraudulent preference
as between creditors, bringing the case within the
act of 1856. It was a case in which the entire
estate of Shipman passed to creditors for distribu-
tion. It was so considered by the court below, and
the only question to be settled here arises as to
the conflicting liens or priorities in right in the dis-
tribution of the fund arising from the sale of Ship-
man's property.

. The evidence conduces to show that Shipman was
a private warehouseman, engaged largely in buy-
ing and selling whisky on his own account and
for others. The appellants, Cochran & Fulton, be-
came the indorsers of Shipman for a considerable

sum of money, and in order to secure them in their liability he pledged to them as collaterals certain warehouse receipts for many barrels of whisky, with the serial numbers inserted; and if this controversy was alone with the appellants and Shipman, there could be no question as to the former's right to subject the whisky to the payment of the debt for which they were bound, and which they were compelled to pay. The rights of other parties intervened and they claimed the whisky that had been pledged to Cochran & Fulton as theirs, and were adjudged to have priority in the distribution of the proceeds of the sale of the whisky by the judgment below.

The firm of Cochran & Fulton, as the proof shows, had many transactions with Shipman in the purchase and sale of whisky; and Shipman at one time purchased for the firm one thousand barrels of whisky in his, Shipman's, name, with the agreement that he, Shipman, was to have part of the profits. This was some time prior to the bankruptcy of Shipman, and has no connection with this case except to show the manner in which Shipman was conducting his business.

It is well established that he purchased and sold whisky for others as well as himself, and that he had no partner connected with him in his general business, but now and then became jointly interested with others in the purchase and sale of specific lots of whisky, the whisky being identified by serial numbers, as is usual in the trade.

Vandyke, Powell, Monroe Walker & Son, and the

Anderson County National Bank, are appellees here, and the three first named claim to have purchased, jointly with Shipman, certain specified lots of whisky that were deposited in his warehouse, and placed in each case to the account of the particular joint adventure.

Shipman and Vandyke entered into a writing evidencing their purchase of one hundred barrels of whisky, or their joint interest in the one hundred barrels. This whisky was identified by numbers and removed to the warehouse of Shipman, and there placed to the account of Vandyke & Shipman. Powell had purchased two or more specified lots. jointly with Shipman, with the whisky identified in and out of the warehouse in the same manner as Vandyke, and so with Monroe Walker & Son. These transactions did not constitute the bulk of the business conducted by Shipman, but were small lots of whisky purchased on joint account, and openly held and claimed by the parties when in the warehouse, and before it reached the warehouse, as the joint property of the parties making the purchase. Shipman disposed of most of this whisky held on joint account, not leaving enough to pay to the other joint owners their proportion of the whisky or its proceeds. They claim that in a court of equity their claim is superior to that of the appellants.

The whisky, or the several lots, was purchased for the purpose alone of being sold, and the profits, if any, divided. It is not insisted in argument that Shipman had the right to pledge the whisky belonging to others for his own debt, because it happened.

to be in his warehouse, or that he could issue warehouse receipts and pledge those receipts as security for his debts. He had the power to sell the whisky because it was purchased by the parties for that purpose, and a sale would have passed the title; but here he has pledged whisky in which these appellees had a joint interest to pay his own debt, and this can not be done. One partner in a general commercial partnership has no such right, and in a single adventure, or where the partnership is limited to two or more adventures in particular lots of whisky, or certain specified property, the right of one joint owner to pledge for his own debt can not be maintained, unless authority to do so is shown to have been given by the other parties in interest. It is conceded, or the proof shows, that the pledge was to secure Shipman's own debt, and of property that had been purchased jointly with others.

It can not be said that appellees trusted Shipman too far, for if so, the doctrine would apply to all cases where property is placed in the hands of the commission merchants to sell, either for a particular individual or on joint account, nor do we understand that such a position is urged by counsel. They have endeavored to maintain that these parties, appellees, were dormant partners, and for that reason the whisky passed by the pledge. The proof is clear that they were not partners in the general business of Shipman, for if they were, and the name of Shipman was alone used, the parties who were dormant partners can not assert a claim to the property as against the creditors of the ostensible partner. This

is the general doctrine applicable to commercial partnership; but where parties purchase one or more specific lots or parcels of property on joint account, or in the nature of a limited partnership, and this fact is not attempted to be concealed or the creditor of the one partner not misled by the others, there is no reason for the application of such a rule. If they dealt generally in the sale and purchase of whisky jointly with Shipman, and permitted him, as the ostensible partner, to possess, use and claim it as his own, it would present a different question.

No such case appears from this record. Their purchases of the lot or specified lots of whisky was made on joint account, without fraud or concealment as to the manner of the purchase. It was entered on the books of the warehouse as the joint property of the parties. The appellees concealed nothing. Either party had the right to sell, as it was purchased for that purpose, but neither had the right to pledge for his own debt. The appellants took the pledge from Shipman, believing that he was the owner; but these parties gave him no authority to pledge the whisky in that way. They had done nothing to deceive appellants, or to mislead them in the transaction with Shipman. If they were dormant partners they would be liable for appellants' debt; but when appellants purchased whisky of Shipman, or took whisky in pledge from Shipman, they must know that it is Shipman's property, or that he has the authority to sell or pledge.

Appellants ask: How were they to find out who was the owner of the property? The answer is: How

are they to find out the owner of any of the lots of whisky in Shipman's warehouse? They purchase or take the pledge at their peril. The doctrine of *caveat emptor* applies in all such cases.

Such warehouses under the warehouse law of the State are filled by whisky belonging to many parties. They are places in which whisky is stored, not alone for the owner but for others, and the owner of the warehouse has no power to issue warehouse receipts so as to pass the title against the consent of the owner. The question made in this case as to the effect of the warehouse receipts pledged as collaterals to the appellants may be simplified by asking the further question: Can one joint owner of property pledge the whole to secure his individual debt without the consent of the other; or in a case where two purchase two or three specified lots of whisky for the purpose alone of sale and profit, can one pledge the whole whisky to secure his own debt?

To either question we think there must be a negative response, and the fact that the one having the possession makes the pledge, does not affect the question or make the other a dormant partner. The only reason in this case for making the appellees dormant partners is, that Shipman had the whisky in his warehouse and the appellants did not know that the appellees had an interest in it. These appellees were not sharing the profits or interested in his general business. A dormant partner is one who takes no part in the control and management of the partnership business; but when found out, is liable like the ostensible partner, and for the reason that he is a partner.

It is not pretended that the money obtained of Shipman was applied to the payment of any debts owing by these parties for the whisky ; but, on the contrary, the facts show that they had paid in full for their interests and some of them greatly more.   If one is permitted to conduct a partnership in his own name, and pledges the partnership profits for his own debt, the pledge is good, and the dormant partner, who is unknown to the creditor, will not be permitted to claim the property.   No such case is presented here. Either joint owner or partner in the particular adventure had the power to sell, because it was purchased to sell.   They purchased openly, and in the name of all—not in the name of Shipman alone—and had the whisky entered on the books of the warehouse as the property of both.   They were not interested in the warehouse in any manner or in the general business of liquor dealers.   Shipman's mode of doing business was known where he lived, but may not have been known in Louisville.   All the letter-heads of Shipman showed him to be *an agent for, and wholesale dealer in, certain liquors*, and this indicated clearly that he had or might have in his warehouse whisky belonging to others.

This pledge was taken in Louisville by the appellants on the faith they had in Shipman's integrity. The appellants had done nothing to deceive or mislead them, and no case can be found where the joint owner or the party interested in the special adventure has been made to lose under the circumstances.   The right and authority of Shipman was limited and controlled by the scope of the agreement or under-

taking between them. That was to purchase these particular lots of whisky and sell them; and no authority, express or implied, was given to Shipman to pledge for his own debts.

The cases of Lord v. Baldwin, 6 Pickering, 348; French v. Chase, 6 Greenleaf, 166, and Cammack v. Johnson, 1 Green's Ch'y, 163, are all cases where the ostensible partner conducted the business, and the other was unknown until the liabilities were created; and the court held, particularly in Lord v. Baldwin, that the ostensible partner having caused others to trust him by reason of his having the possession, use, and claim as his own of the property, that it is liable for the debts of the ostensible partner; and in French v. Chase it was said, "Where all the creditors have trusted the man of business and the apparent owner of the goods, one of such creditors who is behind the rest in his attachment, shall not be permitted to supplant them and gain priority because he has discovered the concealed liability of a dormant partner."

The authorities referred to by counsel is where the dormant partner is enjoying the profits of the partnership business, and his name as a partner not disclosed. There was no use or claim by Shipman in this case, by the permission or consent of the appellees, to pledge this whisky for his debts. "Partners in a specific purchase or adventure have, in relation to that adventure, all the rights and are subject to all the liabilities of general partners, but the relationship ceases with the adventure and is confined to it." (Compston v. McNair, 1 Wendell, 463.)

One is not a dormant partner because the party who trades with the one having the possession is not aware of the fact that another is interested; if so, there would be but little security in committing to others the custody of goods for sale, either as agents or on joint account. It is argued that, because he has the right to sell, he, therefore, has the right to pledge, and for no other reason, so far as is disclosed by the facts of the record, than that the holder of the receipts in pledge did not know that appellees had an interest.

We perceive no case of dormant partnership in these transactions, and when parties appear in a court of equity the joint owner or partner in a case like this will be entitled to the property left, when it clearly appears that the partner in fault has already received more of the joint property or its proceeds than he was entitled to.

All of this whisky in controversy was covered by the purchases of Powell, Vandyke, and Walker &. Son, and the *Bank* is claiming to have received a pledge of this whisky for the same reason that appellants took the receipts, not knowing that it belonged, or any part of it, to the appellees. What was left did belong to the appellees, and, therefore, the appellants are not entitled to recover. It is further argued that as Powell, Monroe Walker, &c., had more than one joint purchase with Shipman, that each adventure must pay its own losses and profits. We do not see that the question is properly raised here. The joint account between them shows the nature of the transactions, and the proof

is, that Shipman has received his part of the whisky.

In our opinion no error was committed to the prejudice of appellants in the judgment rendered, and it is affirmed.